STATE of Missouri, Plaintiff-Respondent,

v.

Milton FEEMSTER, Defendant-Appellant.

No. 37008.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Oct. 26, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Dec. 20, 1976.

Graham, Huck, Kasten & LaBeaume, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Gary W. Brandt, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

SMITH, Chief Judge.

Defendant appeals from his conviction of manslaughter following a jury trial. We affirm.

No attack is made upon the sufficiency of the evidence so only a brief review of the facts is necessary. Charles Oglesby was found in his home on January 30, 1974, with a knife in his back. He was dead when found. Four stab wounds were in the body. A fingerprint search of deceased's home produced fingerprints matching defendant's. A man similar in appearance to defendant was seen by a neighbor in Oglesby's company at Oglesby's home on January 29 at 5:30 a.m. Oglesby was not seen alive after that time. A stereo, identified as one purchased by the deceased and missing from his home after the killing, was recovered from defendant's grandmother's home. It had been brought to defendant's mother by Yvonne Gentry, a girl friend of defendant and mother of his three children, and given to defendant's grandmother by defendant's mother. Defendant was admitted to City Hospital No. 1 on January 29 at 9:30 a.m. with a severe cut on his hand. When questioned upon arrest, defendant admitted knowing the deceased, denied he had ever been in deceased's home, and stated the last time he had seen deceased was on January 21 on a public street. While in confinement awaiting trial defendant escaped from Homer Phillips Hospital.

At the trial defendant testified he was at deceased's home on January 29; that they watched television from approximately 11:30 p.m. to 5:30 a.m. or later; that he had received the stereo from deceased prior to that time to repair it; that he did not stab deceased and left him alive. He testified that the cut on his hand occurred when he tripped and fell and cut it on a beer bottle as he was returning from a liquor store to Ms. Gentry's home. He stated he attempted for some time to stop the bleeding himself but finally took a cab to the hospital when he was unable to do so. He was hospitalized for three days.

In rebuttal the state elicited evidence that the television movie defendant claimed to have watched with deceased was not shown on that night. Also called in rebuttal was Yvonne Gentry whose testimony will be discussed more fully later.

■ We deal first with defendant's contention that a mistrial should have been declared when one of the police officers testified to defendant's statements after arrest and then when asked if there were further questions and answers stated: "No., he refused to make any more statements."

The answer was unresponsive and volunteered. It was not commented on further nor referred to at any other time. The trial court indicated it would consider some relief other than a mistrial, such as admonishing the jury to disregard, but defendant refused any relief other than mistrial. Considering the voluntary and unresponsive nature of the statement, its isolated occurrence in the trial, and the extreme relief sought by defendant, we do not find an abuse of discretion by the trial judge in denying the mistrial. *State v. Cuckovich,* 485 S.W.2d 16 (Mo. banc 1972); *State v. Humphrey,* 462 S.W.2d 804 (Mo.1971);

**590**

*State v. Hampton,* 509 S.W.2d 139 (Mo.App. 1974).

Defendant's remaining point is that the trial court erred in declaring Yvonne Gentry a hostile witness and permitting her impeachment. As previously indicated, Ms. Gentry was called as a rebuttal witness by the State. Her testimony concerning the statements of defendant concerning how he received the cut hand were in keeping with his testimony. The State sought to impeach this line of testimony through the use of her grand jury testimony which contained a different explanation made by defendant to her of the circumstances resulting in the cut.

■ Defendant states, and we agree, that in order for the court to allow a party calling a witness to treat that witness as hostile the witness must surprise the party propounding the questions with his answers and the answers as given must state facts which in effect make the witness a witness for the other side. *State v. Castino,* 264 S.W.2d 372 (Mo.1954); *State v. Crone,* 399 S.W.2d 19 (Mo.1966). We find both aspects of this test have been met here. Ms. Gentry had previously testified under oath before the grand jury. The State was entitled to rely upon that sworn testimony as indicative of what Ms. Gentry would testify to at trial. Her testimony at trial was different from her grand jury testimony. As given at trial, her testimony was in complete harmony with defendant's explanation of the circumstances surrounding the cut. Her grand jury testimony was that he said he had received the cut while taking out the trash. That explanation was not consistent with defendant's testimony at trial, particularly the answers given on cross-examination to the extensive, detailed interrogation by the State. The grand jury answers would have cast considerable doubt on the credibility of defendant's in-court testimony. The answer given at trial by Ms. Gentry served exactly the opposite function—to buttress the credibility of the defendant. Ms. Gentry's testimony at trial effectively made her a witness for the defendant. We find no error in the court declaring the witness hostile and allowing her impeachment.

Judgment affirmed.

NORWIN D. HOUSER and ALDEN A. STOCKARD, Special Judges, concur.