STATE of Missouri, Respondent,

v.

Daniel E. JONES, Appellant.

No. WD 32270.

Missouri Court of Appeals,
Western District.

Dec. 22, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 26, 1982.

James W. Fletcher, Public Defender, Sean D. O'Brien, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Michael Elbein, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

Daniel E. Jones appeals from a conviction of second degree robbery in violation of § 569.030 R.S.Mo.1978, for which the trial court sentenced him to five years imprisonment pursuant to a jury verdict. We affirm.

On February 20, 1980, at approximately 10:00 p.m., Albert Kerns left a Kansas City Kings basketball game still in progress to visit a friend. When he arrived at his destination of 37th and Walnut, he remained in his car to listen on the radio to the game's end. A man whom Kerns identified as the *defendant approached Kerns' car and asked* directions to Warwick Street. When Kerns lowered the car window to answer, the man pulled a handgun and demanded that Kerns hand over his money and billfold. Kerns relinquished his billfold containing credit cards and at least $25 to $30 cash to the robber, who then ordered Kerns out of the car. As he alighted, Kerns noticed the presence of another individual.

The pair first commanded Kerns to run east on Warwick or 37th Street. They changed their minds, however, and directed Kerns to get under his car. While Kerns was beneath his car, one of the assailants started kicking him. The robbers asked Kerns if he had any rings. When he said that he did not, they ran away.

Five days later Kerns identified the defendant in a police lineup as one of his attackers. At trial, he described the gunman as five feet, seven or eight inches, slim build, short hair, wearing a cap and sporting a light mustache. He testified that the area where the robbery occurred was fairly well lighted, that the dome light in his car was on when the assailant first approached. He saw the gunman's face clearly. He estimated that the robbers were in his presence a total of four or five minutes.

Officer Ray Matlock, who interviewed Kerns immediately after the incident, was called to testify on behalf of the defendant. He said the only description Kerns gave him of the two suspects was that they were black and approximately twenty years old. Kerns testified that he gave Matlock a fuller description.

During cross-examination, the defendant's counsel questioned Kerns about prior testimony he had given during a hearing on the defendant's pretrial motion to suppress identification. The following constitutes that exchange:

Q. Do you recall testifying at a hearing in connection with this case on May 1st of this year?

A. Yes.

Q. Do you recall testifying during that hearing that the man with the gun did not have any facial hair? Do you recall saying that?

A. I'm not real sure.

Q. Is it possible that you did say that?

A. It is possible I might have said it, but—

. . . .

Q. Mr. Kerns, did you say that you may have said that the person did not have any facial hair?

A. It is possible I could have said that.

Q. Are you uncertain about that, Mr. Kerns?

A. I don't know. I remember the face and the hairline, stuff like that and I do remember that for sure. That I will never forget.

Q. You remember the face and hairline?

A. Yes.

Q. So you don't remember any facial hair?

A. Well, seemed like to me he had a mustache. I might be mistaken, but it seemed to me like he had a black mustache.

After that the state filed a motion in limine to prevent the defendant from introducing into evidence a partial transcript of Kerns' testimony at the pretrial hearing. The defendant offered this transcript to impeach Kerns' trial testimony concerning the suspect's facial hair. The trial court sustained the motion. The defendant contends that the ruling was erroneous.

The portions of the pretrial transcript which the defendant sought to introduce at trial include the following:

Q. Do you recall whether or not this person had any facial hair at that time?

A. I don't think so.

Q. Did you tell the police officer that the person did not have facial hair?

A. Yes.

. . . .

Q. Now, when did you—let me ask you this. You were—you remember a man who had a hat on, don't remember his clothing description, but you remember he was—did not have any facial hair, is that what you are saying?

A. Yes.

Kerns' responses on cross-examination at trial themselves placed his credibility in doubt, rendering it unnecessary to introduce evidence of his prior testimony. He stated it was "possible" he could have said that the gunman had no facial hair and that he "might be mistaken" about the existence of the mustache. In addition, at trial Officer Matlock's testimony further tended to discredit the witness' description.

Contradiction as a means of impeachment presupposes a previous factual statement by the witness inconsistent with his trial testimony. *Lewis v. Hubert*, 532 S.W.2d 860, 865 (Mo.App.1975); *Aboussie v. McBroom*, 421 S.W.2d 805, 807 (Mo. App.1967). Moreover, the prior statement must be inconsistent with the whole effect and impression of the witness' testimony. "Isolated words or phrases contained in the testimony or an omission of detail supplied at trial will not suffice as a basis for the necessary contradiction." *State v. Nimrod*, 484 S.W.2d 475, 478 (Mo.1972).

In the instant case, Kerns' testimony at the motion to suppress hearing was not necessarily inconsistent with his trial testimony taken as a whole. When asked at the pretrial hearing itself whether he recalled if the robber had any facial hair, Kerns replied, "I don't think so." This indefinite response evidences Kerns' uncertainty regarding the suspect's description. He expressed that same uncertainty during trial when he admitted the possibility that he was mistaken as to the assailant's having a mustache. Absent the threshold showing of an inconsistency between Kerns' testimony, use of the prior statement for impeachment is questionable. *State v. Ivicsics*, 604 S.W.2d 773, 780 (Mo.App.1980).

A trial court has the discretion to limit cross-examination and introduction of evidence for impeachment which it must balance with an accused's constitutional right to a fair trial. *State v. Summers*, 506 S.W.2d 67, 73 (Mo.App.1974). "Prejudice ensues from a denial of the opportunity to place a witness in his proper setting and put the weight of his testimony and credibility to a test, without which the jury cannot fairly appraise them." *Alford v. United States*, 282 U.S. 687 at 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931). That discretion includes the duty to determine the relevance, materiality and remoteness of proffered impeachment evidence. *See Stapleton v. Griewe*, 602 S.W.2d 810, 813–14 (Mo. App.1980). Absent a clear abuse of discretion an appellate court will not fault the trial court's rulings limiting admission of evidence.

We find no clear abuse of discretion by the trial court in refusing to allow into evidence Kerns' prior pretrial testimony, particularly in light of the facts developed by defendant's cross-examination.

Accordingly, we affirm the judgment.

All concur.