STATE of Missouri, Respondent,

v.

Randy ARMBRUSTER, Appellant.

No. 63192.

Supreme Court of Missouri,
Division No. 2.

Oct. 12, 1982.

Rehearing Denied Dec. 3, 1982.

Application for Transfer to Court
En Banc Denied Dec. 3, 1982.

Kenneth A. Seufert, Public Defender, Farmington, for appellant.

John Ashcroft, Atty. Gen., Kelly Klopfenstein, Henry Herschel, Asst. Attys. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Senior Judge.

Appellant, Randy Armbruster, was convicted by a jury of capital murder and sentenced to a term of life imprisonment without probation or parole for fifty years. Jurisdiction is vested in this Court pursuant to Mo. Const. art. V, § 3.

Appellant contends that "the State failed to present sufficient evidence to make out a submissible case on the element of deliberation, to-wit, whether [he] reflected upon the shooting of the victim coolly and fully before doing so." For this reason, we shall set forth in considerable detail the evidence bearing on the issue of deliberation. However, it is not the function of this Court to weigh the evidence, but we are only to determine whether there is sufficient evidence from which reasonable persons could have found appellant guilty as charged. *State v. Brooks,* 618 S.W.2d 22 (Mo. banc 1981).

A jury reasonably could have found that on August 10, 1980, at approximately 6:30 p.m., Roy Craig, Jr., the victim, struck appellant several times and warned him to stay away from his (Craig's) sister. After Craig left, appellant remarked to a friend who had witnessed the fight that he would "get even." Appellant left and went home where he remained for about an hour. He then got his shotgun and left the house, as he testified, to "run around the roads" and shoot rabbits. Appellant drove by Steve's Mini-Mart located at the junction of Highways 67 and JJ. Craig's car was parked outside the Mini-Mart and he was inside playing "foosball." Appellant pulled into the driveway and "spun a donut" as he exited. Approximately five minutes later, Craig left Steve's Mini-Mart and headed down Highway JJ toward his father's home.

Craig saw appellant on the side of the road and, according to appellant, Craig pulled over to see if he had run out of gas. As Craig walked toward appellant's car, appellant pointed his shotgun out the window and shot him. Craig began to run as the shot was fired and nearly reached the opposite side of the highway before falling.

Appellant left the scene of the shooting, drove home, and went to bed.

Craig's father testified that on his way home the night of August 10, 1980, he saw his son's car parked at Steve's Mini-Mart and approximately one-half mile beyond the Mini-Mart he saw appellant's car pulled into a driveway perpendicular to Highway JJ and appellant was sitting inside the car. About twenty minutes after he arrived home, the father became worried about his son and started for Steve's Mini-Mart to check on him. As he rounded a curve on Highway JJ he noticed a group of people standing in the highway. Someone ran back to his car and told him a boy had been shot. He ran up the road and found it was his son.

Dr. Philip Walker, testifying for the state, indicated that the cause of death was a massive hemorrhage and blood loss due to a traumatic gunshot wound. The shape of the wound was oval, indicating it came at an angle rather than straight on. He estimated the shot was fired from a range of six to ten feet, possibly as far as twelve or fifteen feet.

Early on August 11, 1980, appellant gave three tape recorded statements to the police. In the 1:46 a.m. statement appellant denied any knowledge of Craig's death. However, in a statement given at 5:49 a.m., appellant admitted he shot Craig, and in the 10:15 a.m. statement he supplied more details. Appellant also prepared and signed a written statement admitting the shooting. Appellant later accompanied numbers of the sheriff's department to the woods in back of his house where they recovered an expended shell.

At trial, appellant testified in his own defense claiming he was intoxicated on the day of the shooting. He claimed that when the victim approached the car, appellant believed that the victim was armed and was going to kill him. Appellant further testified that he did not recall pulling the trigger although he acknowledged that he shot the victim. Additionally, appellant claimed he did not remember the contents of his three tape recorded statements or the written statement.

In view of these facts, there was a sufficient basis for the jury reasonably to find that appellant deliberated before killing Craig. Deliberation means that the defendant considered the matter of taking another's life in a cool and deliberate state of mind. *State v. Strickland,* 609 S.W.2d 392 (Mo. banc 1980); *State v. Wood,* 596 S.W.2d 394 (Mo. banc 1980). It is not necessary that the actor brood over his actions for an appreciable period of time, *State v. Ingram,* 607 S.W.2d 438 (Mo.1980), and it is well established that the deliberation and premeditation necessary to constitute capital murder may be inferred from the circumstances of the homicide. *State v. Bolder,* 635 S.W.2d 673 (Mo. banc 1982); *State v. Davis,* 400 S.W.2d 141 (Mo.1966).

Although appellant contends he believed Craig had a gun and was going to kill him and, further, that he did not remember pulling the trigger, the jury was entitled to disbelieve his exculpatory statements. *State v. Turner,* 623 S.W.2d 4 (Mo. banc 1981). Resolution of the issue depended upon appellant's credibility and the weight given his testimony, both matters for the jury to determine. *State v. Jackson,* 608 S.W.2d 420 (Mo.1980). In light of the evidence that appellant threatened to "get even" with Craig, that he went home and got his shotgun, and that he parked at a point which Craig had to pass to get to his father's home, the jury could reasonably infer deliberation. *See State v. Greathouse,* 627 S.W.2d 592 (Mo.1982). Appellant's first point is without merit.

Appellant next asserts that the trial court erred when it overruled his objection to the prosecutor's remark made in argument that he had flagged down Craig prior to shooting him because, he contends, there was no evidence to substantiate the statement and it was not a reasonable inference. In argument to the jury, the prosecutor stated:

Look at the evidence we have submitted. This man—this rabbit hunting trip he made—all of a sudden Roy Craig [victim's father] testifies he saw him in a

driveway just a little after 9:00 .... I submit to you he was there waiting first. He was waiting and waiting for Junior Craig. Waiting to kill him. He was going to get even. Remember that, he was going to get even .... When he said it he was kind of mad. You're darn right he was. And he went back and got his gun, he sat there and waited. No one showed up, so he took off. He knew where Junior was. He took off to Fraizer's store and went flying in there, saw the car, spun around, and waited for him two-tenths of a mile from Fraizer's store. I submit to you there's no doubt here. He waited and flagged him down—." Appellant objected because there has been "no evidence of that." The court overruled the objection and commented, "Keep in mind, ladies and gentlemen, this is argument of counsel and not evidence. It's the reasonable inference the attorneys think can be drawn from the evidence."

The trial court has considerable discretion in allowing or rejecting argument of counsel and its rulings are reversible only for an abuse of discretion where the argument is plainly unwarranted. *State v. Moore,* 620 S.W.2d 370 (Mo. banc 1981). When the prosecutor stays within the evidence and its reasonable inferences, his argument is permissible. *State v. Burroughs,* 559 S.W.2d 42 (Mo.App.1977). Additionally, a prosecutor has the right to draw any inference from the evidence which he believes in good faith to be justified. *State v. Brewer,* 565 S.W.2d 801 (Mo.App.1978).

In the instant case, there was evidence that appellant was parked on the side of the road and that the victim stopped there. There was no direct evidence that appellant flagged down his victim, but Craig did stop for some reason and, as the trial court commented, counsel thought it was a reasonable inference that he was flagged down. Although other inferences could reasonably be drawn, the jury was advised that this was no more than the opinion of counsel that this was a reasonable inference. Under these circumstances, it was solely a matter for the jury to decide

which inference was proper. *State v. Henderson,* 510 S.W.2d 813 (Mo.App.1974). The trial judge did not err in overruling defense counsel's objection. Further, the judge's comment that the prosecutor's remarks were "the reasonable inferences the attorneys think can be drawn from the evidence" did not tend to endorse the prosecutor's argument. The trial judge was merely explaining his ruling on defense counsel's objection, which he may properly do so long as it does not prejudice the appellant. *State v. Neal,* 476 S.W.2d 547 (Mo. banc 1972). Appellant's second point is without merit.

Appellant's third point involves an attempted impeachment of a defense witness. Jim Frazier was called as a witness by appellant. He testified that on the day of the shooting appellant was intoxicated and, also, that after the fight between the appellant and Craig, appellant indicated that he did not understand why Craig was hitting him. In the course of this testimony, the witness stated that after Craig left the area, appellant said he would "get even," or would "get back at him." Defense counsel claimed surprise at this statement. During a conference between counsel and the court, appellant's counsel stated that he wanted to ask the witness "if [he] met with him ... and talked to him"; whether appellant's counsel had asked him "what [appellant] had said after the fight was over"; and whether the witness had told appellant's counsel that "he [appellant] was puzzled and didn't understand why Craig [had hit him]." The court ruled that "those specific questions" could be asked, and they were asked. During this questioning, the witness testified that after the fight appellant said "that he was going to get back at him or something like that."

The trial judge, defense counsel, and the prosecutor then met in chambers to discuss defense counsel's request to impeach the witness by calling his investigator to the stand to testify that the witness did not indicate to him that appellant wanted to get even. From this conference it is clear that when counsel and his investigator talked to the witness before trial and asked

what he heard appellant say, the witness did not tell them that appellant said he was going to "get even" or "get back at him." Also, he did not tell them that appellant did not make either of these statements. He apparently was not asked. Defense counsel's request to impeach his witness was denied because there was no prior inconsistent statement, only volunteered additional information.

■ Generally, a party may not discredit or impeach his own witness. *State v. Sutton,* 454 S.W.2d 481 (Mo. banc 1970). In order for a party calling a witness to treat that witness as hostile, the witness must, by reason of inconsistent statements, surprise the party propounding the questions, and the answers as given must state facts which in effect make the witness a witness for the other side. *State v. Feemster,* 544 S.W.2d 588 (Mo.App.1976). A proper foundation must first be laid by asking the witness, among other questions, if he made the prior statement, and obtaining either a denial or an answer that he failed to remember it. *State v. Ivicsics,* 604 S.W.2d 773 (Mo.App. 1980). Some real inconsistency must appear before evidence of alleged inconsistent statements or conduct becomes competent, *State v. Fenix,* 311 S.W.2d 61 (Mo.App. 1958), and only when a witness denies or equivocates about a statement may the examiner show that he in fact did make a previous inconsistent statement. *Lewis v. Hubert,* 532 S.W.2d 860 (Mo.App.1975).

■ The statement in the instant case did not meet the threshold requirements for impeaching one's own witness. It was not inconsistent for the witness to testify that appellant did not understand why the victim hit him and also to testify that appellant stated he would get even. Because there was no denial or equivocation, nothing existed to impeach his credibility. The court did not abuse its discretion by refusing to permit appellant to impeach his witness.

■ Finally, appellant maintains that the transcripts of appellant's three tape recorded statements were so inaccurate and misleading as to deny the appellant a fair trial. During the trial, defense counsel objected to the use of the transcripts as cumulative and a violation of the best evidence rule but never contested the accuracy of the transcripts. On this appeal, for the first time, defense counsel now alleges that he found a serious and substantial inaccuracy between the 5:49 a.m. transcript and the actual tape recording. Because appellant failed to preserve the point, we review it for plain error resulting in manifest injustice or miscarriage of justice. Rule 30.20.

The portion of the transcript contested by appellant is as follows:

I just happened to run into him again so *you know he got,* stopped by me. He got out, I was all messed up and stuff and got out and *just shot him.* I was just out of my head. That's what it was. (Emphasis added.)

According to appellant, what he actually said is as follows:

I just happened to run into him again so, *I thought he got you know,* stopped by me. He got out, I was all messed up and stuff, and got out *and he was shouting and something like that.* I was out of my head. That's what it was. (Emphasis added.)

The appellant agrees that use of the transcripts was proper since portions of the tape were difficult to follow and the transcripts were necessary to assist the jury in listening to the tapes. *U.S. v. McMillan,* 508 F.2d 101 (8th Cir.1974), *cert. denied, McMillan v. United States,* 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); *State v. Prince,* 628 S.W.2d 920 (Mo.App.1982); *State v. Brown,* 607 S.W.2d 881 (Mo.App.1980). However, appellant asserts the transcript for the 5:49 a.m. statement was inaccurate.

This Court has listened to the recorded statements, and based on that review we are of the opinion that the version in the transcript is correct. This results in appellant's contention being without merit. However, assuming that some might disagree with our conclusion as to what appellant said on the tape, the trial judge clearly cautioned the jury to concentrate on the

768

tapes and that the transcripts were merely an aid for the jury, and that the tapes themselves were the actual evidence. Defense counsel was given ample opportunity to compare the tapes and transcripts for accuracy. The transcripts were collected from the jury after the tapes were played and the jury was not permitted to have the transcripts during its deliberation. In any event, there is no showing of manifest injustice on this record. *See State v. Montgomery,* 590 S.W.2d 105 (Mo.App.1979). There was no error in the use of the transcripts.

Judgment is affirmed.

WELLIVER, P.J., and HIGGINS and SEILER, JJ., concur.