**STATE of Missouri, Plaintiff–Respondent,**

v.

**Terry GEE, Defendant–Appellant.**

**Terry GEE, Movant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 58515, 59907.**

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 12, 1991.

Raymond Legg, Asst. Public Defender, Central Appellate Div., Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This is a consolidated appeal arising from the defendant's conviction for three counts of robbery in the first degree, § 569.020, RSMo 1986, and three counts of armed criminal action, § 571.015, RSMo 1986. The conviction was obtained in the Circuit Court of the City of St. Louis and the defendant was sentenced to terms totalling thirty years. On appeal the defendant alleges the trial court erred in: (1) overruling his objection to certain testimony as hearsay and in denying his motion for a mistrial as to that testimony; (2) denying in evidence of alleged prior inconsistent statements of three of the witnesses; (3) overruling defendant's objection to the peremptory strikes used by the state against black venirepersons; and, (4) allowing the sentence and judgment to show defendant as a persistent offender. The defendant also appeals from the dismissal of his motion to

vacate judgment and sentence under Supreme Court Rule 29.15. We affirm.

The evidence adduced at trial showed the following: On October 18, 1989, three armed robberies occurred within a span of 30 to 45 minutes of one another. The first robbery occurred when the victim, Harry Deavens, was accosted by a man with a gun in the parking lot outside a bank on St. Louis Avenue. The robber pointed a gun at Deavens as he was sitting in his pickup truck and demanded that he open the door. Deavens put money into the robber's bag and then watched as the perpetrator got into a rusty beige Cadillac. Deavens described the robber as a young black male approximately 5'5" to 5'8" in height, weighing around 150 pounds, wearing white-trimmed sunglasses, a hat, and carrying a blue or green bag.

The second robbery occurred at a Fina Service Station on East Grand. The robber went up to an employee of the service station, Brenda Combs, pulled out his gun and demanded "everything you have got." Combs and the robber went to the cash-register where another clerk put money into the robber's bag. Combs observed the robber get into a brown Cadillac after he left the store. Combs described the man as a black male, about 5'6" in height, wearing a cap and white-rimmed sunglasses.

The third robbery occurred at the Majik Market on North Broadway when a man went to the cash register with a quart of beer. When the cashier, Laura Kane, opened the register the man flourished a gun and asked Kane to give him all the money. Kane backed away from the register and the man grabbed money and food stamps and put them in his gym bag. Kane described the robber as a black man, 5'6" to 5'7" in height, wearing a hat and white-rimmed glasses, and carrying a blue gym bag.

After the second robbery, Police Detective Lewis Clayton and his partner began a search of the area around the robbery for the vehicle described by the witnesses. Officer Clayton located the vehicle parked in the 700 block of Baden Avenue and began a canvass of the area to obtain any infor-

mation regarding the robbery. An elderly women told Officer Clayton she saw a man get out of the rust-colored Cadillac and walk toward 714 Baden Street. A resident of 714 Baden Street, Ralph Jordan, implicated the defendant in the robberies.

With this information Detective Clayton made up a photo array containing defendant's picture. The defendant was identified by each victim as the man who committed all three robberies and this identification was repeated at a subsequent lineup and in court. Jordan also identified the defendant from the photo array.

Following the defendant's conviction he filed a motion under Rule 29.15 which was dismissed by the motion court as untimely. The defendant appeals both the denial of this motion and his conviction by the trial court.

In his first point the defendant claims the trial court erred in admitting certain testimony given by Detective Clayton. In particular the defendant objected to Detective Clayton's testimony regarding the information he received from the elderly woman which linked the Cadillac to 714 Baden Street and the information Detective Clayton received from Jordan linking the defendant to the Cadillac. The defendant argued that this testimony was hearsay and denied him his right to confront the witnesses against him. In addition, the defendant objected to Detective Clayton's testimony that Jordan told him the defendant had committed the robbery. The defendant objected to this as hearsay and moved for a mistrial. The court overruled the motion for a mistrial and properly instructed the jury to disregard that statement.

■ Testimony of what another said offered in explanation of conduct rather than as proof of the facts in the other's statement is not inadmissible hearsay. *State v. Murray*, 744 S.W.2d 762, 773 (Mo. banc), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). In *Murray*, a police officer was allowed to testify at trial to statements by a witness that her friend had been raped, the location of the crime scene, the names of the defendant and his brother

as two of the assailants, and a description of the two men. The officer's testimony was allowed in to explain this officer's subsequent action in reporting to the crime scene and other officers' actions in responding to the broadcast of the suspects' names and descriptions. *Id.*

In *State v. Brooks*, 618 S.W.2d 22, 25 (Mo. banc 1981) the court stated that testimony to explain an officer's conduct, rather than to prove the truth of the facts testified to, is admissible to explain the officer's subsequent action and supply relevant background and continuity to the action. This provides the triers of fact a portrayal of the events in question, which is more likely to serve the ends of justice in that the jury is not called upon to speculate on the cause or the reasons for the officer's subsequent activities. *Id.*

The defendant contends that *State v. Kirkland*, 471 S.W.2d 191 (Mo.1971), is controlling. However, *Kirkland* has been limited to situations where the hearsay testimony was relied on heavily by the state to prove one of the essential elements of the crime. *State v. Brooks*, 618 S.W.2d at 26.

■ Here, the testimony of Detective Clayton was not admitted for the truth of the matters asserted but rather to explain the commencement of his investigation of the defendant. The testimony of Detective Clayton was not relied on by the state to prove the defendant's identification in that there was ample other evidence identifying the defendant as the robber and linking him to the car. The detective's testimony, therefore, was not inadmissible hearsay.

■ The defendant's claim that Detective Clayton's testimony violated his right to confront the witness against him is also without merit. Where a witness testifies with regard to out-of-court statements offered for a non-hearsay purpose it raises no confrontation clause concerns. *Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 2081–2082, 85 L.Ed.2d 425 (1985); *State v. Molasky*, 655 S.W.2d 663, 668–69 (Mo.App. 1983), *cert. denied*, 464 U.S. 1049, 104 S.Ct. 727, 79 L.Ed.2d 187 (1984). The defendant's first point is denied.

■ On his second point of appeal the defendant alleges the trial court erred in denying as evidence alleged prior inconsistent statements as to the identification of the defendant made by witnesses Deavens, Combs and Kane. The defendant contends that details omitted from the trial testimony of the witnesses as to the defendant's identification were prior inconsistent statements. In particular the defendant wanted to introduce evidence that Deavens initially described the defendant as wearing a blue and white scarf while Combs and Kane initially described the defendant as wearing a black and white British Knights Jacket. All three witnesses stated they could not recall making those statements and the trial judge denied the defendant the opportunity to impeach the witnesses with these statements because he felt there was no inconsistency.

■ There must be some real inconsistency before evidence of alleged inconsistent statements or conduct becomes competent. *State v. Armbruster*, 641 S.W.2d 763, 767 (Mo.1982). The prior statement must be inconsistent with the whole effect and impression of the witness' testimony and the prior statement should not merely be an omission of detail. A trial court has the discretion to limit cross-examination and introduction of evidence for impeachment which it must balance with an accused's constitutional right to a fair trial. This discretion includes the duty to determine the relevance, materiality and remoteness of the proffered impeachment evidence. *State v. Jones*, 629 S.W.2d 589, 591 (Mo.App.1981). Absent a clear abuse of discretion an appellate court will not fault the trial court's rulings limiting admission of evidence. *Id.*

Here, the defendant wanted to impeach the witness with alleged prior inconsistent statements. These statements consisted of details the witnesses omitted from their trial testimony but allegedly gave to the police earlier. The trial court refused to allow this evidence in because it felt there was no real inconsistency. We find this was not a clear abuse of discretion by the trial court. Point denied.

The defendant's next point alleges that the trial court erred in overruling the defendant's objection to the state's peremptory strikes. Defendant contends that the state improperly used its peremptory strikes to remove black venire members from the jury pool, on the basis of their race alone, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The state has argued that there is insufficient information in the record to support such a claim and also contends the defendant has not met the requirements of *Batson*.

The state argues that preservation of a *Batson* issue for appellate review requires that the races of the venire person composing the jury pool appear in the record. The state cites *State v. Lawrence*, 791 S.W.2d 729 (Mo.App.1990) and *State v. Jones*, 726 S.W.2d 400 (Mo.App.1987) in support of this contention. In *State v. Lawrence*, 791 S.W.2d at 730, the court cited *Jones* in support of the proposition that the *Batson* issue was not preserved for appeal because the record did not disclose the races of the venirepersons. In *State v. Jones*, 726 S.W.2d at 401, the court ruled the *Batson* issue was not preserved for appeal where the voir dire did not disclose who, if any, of the potential jurors were black. The court noted the record was not even minimally developed in this area.

Here, the record sets out that the venire pool contained fifteen blacks and twelve whites after strikes for cause; that the state struck five blacks and one white from the group which would have comprised the sitting jury and one black from the alternative-juror group. In addition, the record sets out that the final jury consisted of eight blacks and four whites. We find there is sufficient information in the record to decide the defendant's claim.

In order to have a claim under *Batson* the defendant must first make a *prima facie* case that venire members were stricken on the basis of their race. The requirements laid out by *Batson* to make a *prima facie* case are: (1) the defendant must show he is the member of a cognizable racial group and the prosecutor has utilized peremptory challenges to remove venire persons of the defendant's race; (2) defendant may rely on the fact that peremptory challenges permit discrimination by those inclined to discriminate; and (3) that those facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. The Supreme Court has recently expanded upon *Batson* in *Powers v. Ohio*, — U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

*Powers* held that a defendant was no longer required to show that he or she is of the same race as the venireperson alleged to have been stricken for racial reasons. *Powers*, — U.S. at ——, 111 S.Ct. at 1373. In reaching this decision the court noted that the Equal Protection Clause prohibits a prosecutor from using the state's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race. *Powers*, — U.S. at ——, 111 S.Ct. at 1370. The decision also focused on the right of an individual juror not to be excluded from any particular petit jury on account of race. *Id.*

This court has recently ruled that the *Powers* decision overrules part of the holding in *State v. Burgess*, 800 S.W.2d 743 (Mo. banc 1990). *State v. Hudson*, 815 S.W.2d 430 (Mo.App.1991). In *Burgess* the court rejected a *Batson* challenge because the resulting jury was comprised of one-third blacks. *Burgess*, 800 S.W.2d at 747. The court noted this statistic undercut any charge of discrimination and, therefore, the prosecutor need not give any reason for his peremptory strikes. *Id.* In *Hudson*, this court ruled that in light of *Powers* the prosecutor must give explanations for his peremptory challenges and therefore remanded the case. *Id.*

Here, the defendant attempts to make a *prima facie* case by showing the venire of 24 was 58% black and the prosecutor used five of six, or 83%, of his strikes against blacks. The defendant cited *United States*

*v. Alvarado,* 923 F.2d 253 (2nd Cir.1991) in arguing that the significant disparity between the percentage of blacks struck from this panel makes out a *prima facie* case under *Batson.* The Missouri Supreme Court has rejected a similar purely statistical argument.

In *State v. Griffin,* 756 S.W.2d 475, 482 (Mo. banc 1988), the defendant tried to make a *prima facie* case by showing that while blacks made up approximately 26% of the venire after challenges for cause, the prosecutor used 50% of his peremptory strikes against blacks. The court noted that, while evidence of a pattern of strikes against blacks can be indicative of racially motivated peremptory challenges, the state is not required to adhere to a specific mathematical formula in its peremptory strikes. *Id.* In addition, in rejecting the defendant's argument, the court pointed out that three blacks who could have been peremptorily struck by the state were not. The court stated that this undercuts any inference of impermissible discrimination. *Id.*

A trial court's decision as to whether the prosecutor discriminated in the exercise of his peremptory challenges may not be reversed unless the reviewing court finds that decision clearly erroneous. *State v. Antwine,* 743 S.W.2d 51, 66 (Mo. banc 1987). Here, the defendant attempted to make out a *prima facie* case under *Batson* using purely statistical evidence. The prosecutor, however, provided the trial court with racially neutral explanations for striking the jurors in question.[1] In addition, the trial court took into consideration its past experience with the prosecutor and stated "I have never known him to take a position where he purposefully would try to exclude members of the black race, just for that reason." Past experience with the prosecutor is another factor to be weighed under *Antwine,* 743 S.W.2d at 65. Finally, the fact that eight of the twelve members of the final jury were black should be taken into consideration. This no longer under-

cuts any inference of impermissible discrimination in light of *Powers,* but it remains relevant to show that the prosecutor did not discriminate. Taking into consideration all of these factors and the criminal evidence supporting defendant's claims, we conclude the trial court's decision that defendant had not established a *prima facie* case of discrimination is not clearly erroneous. Point denied.

The state agrees with the defendant on his fourth point of appeal which is that the judgment and sentence should only show the defendant to be a prior offender. Through some type of error the judgment form indicated the defendant to be a prior and persistent offender, when it should have only indicated he was a prior offender.

Rule 29.12 gives a trial court the power to correct clerical mistakes in judgments arising from oversight or omission. Accordingly, we direct the trial court to correct the judgment and sentence to reflect that defendant was found to be a prior offender and not a persistent offender.

■ The defendant's final point on review is that the motion court erred in dismissing the defendant's Rule 29.15 motion as untimely. Defendant argued this denied him due process of law, equal protection of the law and the writ of habeas corpus. Rule 29.15 requires such a motion to be filed within thirty days after the filing of the transcript in the appeal pursuant to Rule 30.04.

■ Appellate review of the dismissal of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. *Day v. State,* 770 S.W.2d 692, 695 (Mo. banc 1989). In *Day* the court found the time limitations of Rule 29.15 to be valid and mandatory. *Id.* Here, the transcript in defendant's direct appeal was filed on November 20, 1990, 77 days prior to the

---

**1.** The prosecutor avowed that three of the black venirepersons were stricken because they had close family members presently incarcerated. Another had a close family member with a criminal charge pending in court and the fifth

black venireperson was stricken primarily because of a poor rapport with the prosecutor, but, also because she claimed her sister had been "murdered" by the police.

filing of defendant's pro se motion under Rule 29.15. This is untimely under Rule 29.15 and the decision of the motion court is not clearly erroneous. The defendant's final point is denied.

The conviction is affirmed. The cause is remanded for the trial court to amend its finding that the defendant is a persistent offender and to correct the sentencing accordingly, if necessary. In all other respects the judgment is affirmed.

STEPHAN and CRIST, JJ., concur.