**STATE of Missouri, Respondent,**

v.

**Daniel C. BAILEY, Appellant.**

No. 70345.

Supreme Court of Missouri,
En Banc.

Nov. 15, 1988.

Mary C. McWilliams, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

FERNANDO J. GAITAN, Special Judge.

Defendant-appellant, Daniel C. Bailey was found guilty by a jury of first degree tampering with a motor vehicle and was sentenced as a persistent offender to a term of three years imprisonment. Defendant appealed alleging the trial court erred: (1) by permitting the state to introduce character evidence when defendant had not placed his character in issue; and (2) by permitting the state to proceed on an indictment which was defective in that it failed to allege the name of the owner of the vehicle. The Missouri Court of Appeals —Eastern District, affirmed the trial court. However, the court of appeals transferred this cause to this Court after opinion to consider an apparent conflict which exists between MACH–CR 23.21 which is the criminal charge for tampering in the first degree (See § 569.080.1(2), RSMo ), and existing case law which required the owner's name to be stated.[1]

The facts are summarized as follows: On September 11, 1986, at about 10:30 a.m., five police officers of the City of St. Louis were driving to a residence on Wisconsin Street to arrest defendant for a different offense. Near the residence, some of the officers observed a new Mazda 323 slide through an intersection. The officers recognized the defendant as the driver of the Mazda. They followed him as he pulled up to the residence. Defendant parked, got out of the car, and walked toward the house. The officers confronted him on the front porch, arrested him, and informed him of his rights. The officers accompanied defendant into the house, but Detective Willie McCuller went outside to inspect the Mazda that defendant had been driving.

The Mazda appeared to be new, and it had no license plates, temporary license,

---

1. Because we concur with the view of the Missouri Court of Appeals—Eastern District, we have utilized the language of their opinion where appropriate.

state inspection sticker, or hub caps on the wheels. Detective McCuller observed that: (1) there were numbers written on the front and rear windshields; (2) the seats were covered in plastic; (3) the hub caps and rearview mirrors inside the car were wrapped in plastic; and (4) a packet containing the operation instructions, serial numbers, and other papers was on the floor in the front. McCuller returned to the house and told Detective Linn Laird what he had seen and that he believed the car was stolen. Detective Laird asked the defendant if the car was stolen. Defendant said it was possible it was stolen, but he did not steal it, he got the car from a Cuban male.

Later it was determined the Mazda had been in the possession and custody of Union Pacific. Ricky Perry, a special agent of Union Pacific, testified that the Mazda had been transported to St. Louis, unloaded, inspected, and parked on a holding lot on September 10, 1986. He stated the numbers on the windshield and the plastic-wrapped seats, hub caps, and rearview mirrors inside the car were normal procedures during shipment to the dealer.

At trial defendant made a motion in limine to exclude testimony that the officers were going to the residence to arrest him for another offense. The court apparently granted the motion, at least in part, because it determined that the officers could testify only that they went to the residence pursuant to a "wanted" status or pursuant to an investigation.

### I.

In his first point on appeal, defendant contends the court erred in failing to declare a mistrial after Detective Laird testified that the Mazda was stolen based in part on the fact that defendant was driving it. Defendant asserts this testimony was inadmissible character evidence. We believe the trial court acted correctly in not declaring a mistrial.

Detective Laird was the principal investigator on this case and was the third officer to testify regarding the arrest and investigation. Prior to his testimony, the jury knew from the testimony of the other officers that five officers had gone to the residence to arrest defendant, were acquainted with defendant, recognized him as the driver of the Mazda, and that they concluded the car was stolen after defendant was arrested. The jury also was aware of the items the officers had observed about the car, and that the car was new, and had not yet been delivered to the dealer at the time.

During cross-examination, defense counsel questioned Detective Laird about various circumstances considered in determining whether a car was stolen, such as signs of forcible entry, and whether these circumstances were present in this case. Several exchanges of redirect and recross examination ensued. Then counsel for defendant on further recross asked the following:

Q. Just a few questions, Detective. Actually, you didn't know the car was stolen when you looked at it, did you?

A. We were pretty sure it was.

Q. You had an idea it was stolen based on your experience as a police officer?

A. Yes.

Defense counsel asked about the detective's experience with investigating stolen cars. On further redirect the prosecutor asked,

Q. Officer, when you look for a stolen car what do you look for?

A. I look at the people driving it. I look at all the things we were talking about earlier as far as the car having windows busted out, the ignition pulled out, but you also look at other things.

Detective Laird was asked if he looked for broken windows, pry marks, and a broken ignition. He stated that he looked but found none of the signs that the car was stolen. Then the prosecutor asked the following:

Q. What made you think this car was stolen?

A. One thing was the person driving it.

Q. Okay. Anything else?

MR. ZOTOS [defense counsel]: Your Honor, may we approach the bench?

[Counsel approached the bench and the following proceedings were had outside the hearing of the jury.]

MR. ZOTOS: I am going to move for a mistrial.

The court refused to declare a mistrial, but felt the answer was improper and, at defense counsel's request, instructed the jury to disregard it. The prosecutor continued as follows:

Q. Other than what you just said, Officer, what made you think this car was stolen given the fact it had no pry marks, no broken windows, that type of thing?

A. The statement made to us about the car and just the general look of the car.

The declaration of a mistrial is a drastic remedy that should be employed only in those extraordinary circumstances in which the prejudice to the defendant can be removed in no other way. The decision to declare a mistrial rests largely within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Burroughs,* 740 S.W.2d 272, 274–75 (Mo.App.1987).

■ The trial judge felt that the detective's answer was improper, but not prejudicial, therefore, he instructed the jury to disregard it but he did not declare a mistrial. We agree that the answer was not prejudicial in that at the time Detective Laird testified, the jury was aware that defendant had prior contact with the police. The fact that five officers were present to arrest defendant on another offense would alert any reasonable person to believe he had been at least under suspicion previously. Prior to the remark in question, defense counsel had questioned Detective Laird concerning the factors he looked for in determining whether a car was stolen and whether the detective in fact had a basis for believing the Mazda was stolen. The prosecutor was attempting to rebut this line of cross-examination when the answer was made. Detective Laird had already testified, without objection, that the person driving the car was one factor he considered in determining whether the car

was stolen. It appears to us that defendant's counsel opened up this area of inquiry to redirect examination. *See State v. Houston,* 607 S.W.2d 183, 184–85 (Mo.App. 1980). Moreover, the statement was cumulative to the testimony already in evidence that indicated that prior to his arrest for this offense defendant was known to the police. The trial court took the requested curative steps, short of declaring a mistrial. It did not abuse its discretion in refusing to declare a mistrial.

II.

In this second point, defendant contends the indictment is fatally defective because it failed to allege the name of the owner of the vehicle. This is not so. The state's charge followed word-for-word MACH–CR 23.21, the approved charge for first degree tampering. MACH–CR 23.21 was adopted by the Supreme Court on April 11, 1984, and became effective on January 1, 1985.

Rule 23.01 governs the form of indictments or informations, and subsection (e) provides that, "[a]ll indictments or informations which are substantially consistent with the forms of indictments or informations which have been approved by this Court shall be deemed to comply with the requirements of this Rule 23.01(b)." Rule 23.01(e). We believe the state's charge here is sufficiently in conformance with the approved charge under Rule 23.01(e) to reject defendant's challenge.

However, the approved charge is not in accord with prior case law in Missouri regarding the requirement that the owner of the vehicle be specified in a tampering indictment for information. Although we have found no cases prior or subsequent to the adoption of MACH–CR 23.21 discussing the issue, in *State v. Wells,* 585 S.W.2d 267 (Mo.App.1979), the Missouri Court of Appeals—Southern District addressed the necessity of stating the owner of the vehicle in a tampering information. In Wells, the defendant was charged under *§ 560.175, RSMo 1969* (repealed), which provided that "[n]o person shall ... tamper with a motor vehicle ... without the permission of the owner thereof." The court held that own-

ership of the vehicle was an element of the offense of tampering; therefore, the failure to allege such ownership required the court to reverse and remand the case. The court held that "the failure to include the name of the owner of the motor vehicle rendered the tampering count fatally defective." *Wells,* 585 S.W.2d at 268.

Prior to the approval of MACH–CR 23.21 in April 1984, the official charge for tampering required the name of the owner of the property to be specified. *See* MACH–CR 23.22 (1979).

A similar requirement that the owner or possessor of the property involved be specifically named in the charge has been the law historically for charges of larceny and burglary. *See State v. Cantrell,* 403 S.W.2d 647, 650 (Mo.1966) (larceny); *State v. Gibson,* 543 S.W.2d 273, 276 (Mo.App.1976) (burglary). The approved charges for stealing and burglary presently specify the name of the owner or possessor of the property be included. MACH–CR 24.02.1 (stealing without consent); MACH–CR 23.50 (first-degree burglary).

The Supplemental Notes on Use in MACH–CR 1.00 state in relevant part the following:

This [the adopting of the MACH–CR forms] was done without judicially deciding or foreclosing any legal, constitutional, procedural, pleading, evidentiary, instructional or other issue which may arise in cases pleaded, tried or appealed under any laws covered by the MACH–CR forms, even though the forms and Notes on Use approved by the Court are followed and used. This Note on Use also applies to all of the Supplemental Notes on Use either separately numbered or set out herein.

After reading the approved charge, the Notes on Use, Rule 23.01, and the case law, it is apparent that there are inconsistencies. Consequently we must examine the law in the context of these inconsistencies.

The purpose of an information or indictment is twofold: First, to inform the accused of charges against him so that he may prepare an adequate defense; and second, to preclude retrial on the same charges should a jury acquit him. *State v. Lewis,* 642 S.W.2d 627, 630 (Mo. banc 1982). To meet these requests, the information must define a specific offense. To define a specific offense, Rule 23.01(b)(2) provides that the information shall state plainly, concisely and definitely the essential facts constituting the offense charged. "Essential facts" simply means the elements of the offense. *State v. Ladner,* 613 S.W.2d 951, 952 (Mo.App.1981).

The *Ladner* court distinguished between statutes which detail the essential elements of the prohibited offense, and statutes which define the offense in generic terms which do not identify the specific conduct of the appellant which was contrary to law. *Id.* at 952–53. The court further stated that an information framed in the language of any statutes which "detail the essential elements of the prohibited offense" necessarily defines the essential elements of the offense. Thus, the information properly notifies the defendant of the specific offense. *Id.* at 952.

The indictment in the present case directly reflects the statutory language of *§ 569.080.1(2), RSMo 1986,* which states:

(2) He knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile, airplane, motorcycle, motorboat and other motor-propelled vehicle *without the consent of the owner thereof.* [Emphasis added.]

The indictment of appellant reads:

The Grand Jurors of the City of St. Louis, State of Missouri, charge that the defendant, DANIEL BAILEY, in violation of *Section 569.080.1(2) RSMo,* committed the class C felony of tampering in the first degree, punishable upon conviction under *Sections 558.011.1(3)* and *560.011, RSMo,* in that on the 11th day of September, 1986, in the City of St. Louis, State of Missouri, the defendant, DANIEL BAILEY, knowingly and without the consent of the owner unlawfully operated an automobile, to-wit: a 1987 Mazda 323 DX, silver in color.

The statute in this case does not fall in the class of statutes which, by their terms

are vague, generic and fail to proscribe the specific conduct which was contrary to law. The indictment sufficiently notifies the appellant of all the essential elements of the crime of tampering in the first degree in that he knowingly operated a 1987 Mazda 323 DX, silver in color, *without the consent of the owner*. Further, the indictment tracked word-for-word MACH–CR 23.21, the recommended form of a charge for tampering in the first degree. MACH–CR 23.21 reads as follows:

The (Grand Jurors) (Circuit Attorney) (Prosecuting Attorney) of the (City) (County) of _____, State of Missouri, charge(s) that the defendant, in violation of Section 569.080.1(2), RSMo, committed the class C felony of tampering in the first degree, punishable upon conviction under Sections 558.011.1(3) and 560.011, RSMo, in that (on) (on or about) [date], in the (City) (County) of _____, State of Missouri, the defendant knowingly and without the consent of the owner (received) (possessed) (sold) (altered) (defaced) (destroyed) (unlawfully operated) a(n) (automobile) (airplane) (motorcycle) (motorboat) (motor-propelled vehicle) [briefly describe or identify vehicle].

As previously stated, the indictment is precisely like that recommended by Rule 23.-01(e) and is thus deemed to comply with the requirements of 23.01(b). Because appellant has failed to show any deviation from what is suggested, appellant's claim is without merit. *State v. Neal*, 661 S.W.2d 844, 845 (Mo.App.1983).

Appellant's reliance on *State v. Wells*, 585 S.W.2d 267 (Mo.App.1979) for the allegation that the name of the owner of the stolen vehicle must be specifically alleged is improper. The information in that case was defective not because it failed to state the owner's name but because the information failed to allege ownership or possession in *anybody*. As a result, the information in that case failed to give notice that the title or ownership was not in the accused. *Id.* at 268.

■ Further, since MACH–CR 23.21 follows the language of *§ 569.080.1(2), RSMo 1982*, we have a question of which law controls, prior case law or subsequent statutory law. The question of how to resolve an inconsistency between existing case law and a new statute was addressed in *Biermann v. Biermann*, 657 S.W.2d 65 (Mo. App.1983). There the Missouri Court of Appeals, Eastern District held:

Case law is not overruled by subsequent statutory changes unless the changes are directed specifically to the subject matter of the judicial interpretation. *See Bushell v. Schepp*, 613 S.W.2d 689, 691–92[3] (Mo.App.1981); *State v. Milan, C–II School District, Sullivan County*, 446 S.W.2d 768, 771 (Mo.1969). The legislative definitions or redefinitions of the age of majority post-*Biermann I* were not specifically directed to child support. We hold the age of majority for child support remains the date of emancipation or age twenty-one.

*Id.* at 67.

There the question focused on whether or not the legislature redefined the age of majority for the purpose of child support. The appellant argued that because the legislature reduced the age of majority for purpose of guardianship under Chapter 475, the same should apply under Chapter 452 (Dissolutions). The court of appeals held that the age of majority remained the date of emancipation or age twenty-one because the legislative change was only directed to guardianship. There was no mention in the statute of any intent to change the age in regard to dissolutions.

Here, we believe that the legislature is addressing *§ 569.080.1(2), RSMo 1986*, Tampering in the First Degree. The statute contains no requirement that the name of the owner was necessary. The trial court did not err in permitting the state to proceed on the indictment that failed to name the owner of the vehicle.

JUDGMENT AFFIRMED.

BILLINGS, C.J., and BLACKMAR, WELLIVER, ROBERTSON, RENDLEN and HIGGINS, JJ., concur.

DONNELLY, J., not sitting.