William R. JONES, Appellant,

v.

STATE of Missouri, Respondent.

No. 71737.

Supreme Court of Missouri,
En Banc.

Feb. 13, 1990.

Rehearing Denied March 13, 1990.

David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Chief Justice.

The defendant-appellant was convicted of first degree murder and sentenced to death. The conviction was affirmed. *State v. Jones*, 749 S.W.2d 356 (Mo. banc 1988). He filed a timely 29.15 motion following the affirmance. The motion judge (who was not the judge presiding at the trial) overruled the motion, accompanying his ruling with detailed findings and conclusions.

The evidence against the defendant was very strong even though there was no eye-witness to the killing. The facts are set out in our initial opinion. The defendant retained two experienced private practitioners as trial attorneys. At the guilt phase they followed the strategy of casting doubt on the state's circumstantial case. The defendant did not testify at the guilt phase, but, against the urging of counsel, took the stand at the penalty phase, uttering an unconvincing denial of the killing and of other "bad acts" shown in the penalty phase evidence. The prosecutor did not cross-examine him.

The appellant's brief presents 20 points, mostly asserting incompetence of counsel. We affirm the judgment, concluding that he has not demonstrated error in the findings and judgment of the circuit court.

## I. *Mental Incapacity* (Points I, II, III)

Defense counsel at the trial did not cause the defendant to undergo a psychiatric or psychological evaluation before trial, concluding that he did not have any apparent mental problem. It of course would be counterproductive to argue that the state had not proved the defendant guilty of the charge while at the same time introducing

evidence of a mental condition which might predispose him to unprovoked acts of violence.

■ Motion counsel procured an examination by a psychologist who expressed the opinion that the defendant was suffering from a recognized "mental disease or defect" which he described as "ego dystonic homosexuality" and "dissociative disorder with panic attacks," and that, in the witness's opinion, he could not, at the time of the offense, appreciate the criminality of his conduct or conform his conduct to the law. Stated another way, the psychologist characterized the defendant as a person with homosexual tendencies who was not comfortable with his homosexuality, and suggested that the ensuing conflict produced a violent panic reaction. The trial judge expressly rejected his conclusions, which were based in part on the facts the defendant related to him, finding that "movant was responsible for his actions with respect to culpability and blameworthiness."

Counsel for the appellant argue that trial counsel were incompetent in not obtaining a mental examination prior to trial. The claim is fully answered by the motion judge's finding that the examination which was conducted would not likely have produced a different result at the trial. From testimony of the defendant's trial counsel, moreover, it is highly doubtful that they would have considered the testimony of the psychologist helpful to their case.

■ The appellant claims that the motion court erred in not allowing the lawyer tendered by the movant as an expert to testify that, in her opinion, the psychological evidence, if received at trial, might have made a difference in the outcome of the trial. The trial judge did not err in sustaining an objection to this question because it invited the witness to speculate about an ultimate issue which the court had to decide. *Sidebottom v. State*, 781 S.W.2d 791 (Mo. banc 1989). The witness was allowed to express her opinion fully as to other matters of trial tactics and strategy. The witness, furthermore, was allowed to answer the

objectionable question as an offer of proof, and it is patent from the trial court's findings that the offered answer would not have changed the judge's view of the case.

Nor can it be said that trial counsel were incompetent in failing to present psychological testimony at the trial, whether at the guilt phase or the punishment phase. The psychologist's testimony was unconvincing to the motion judge, and it is doubtful that it would have been convincing to a jury. The strong evidence of the defendant's deliberate conduct over a period of several days makes the claim of "panic" difficult to support. There would be a positive danger in offering the testimony because it indicates the possibility that the defendant would engage in other acts of deadly violence. The jury might conclude that the death penalty would be appropriate for a person so disposed. The evidence supports the trial court's finding that counsel made a reasonable strategic decision.

II. *The Batson Issue* (Point VIII)

■ Four black jurors remained after challenges for cause were ruled. The prosecution struck two of them and the defense one. The fourth sat as an alternate and was excused before deliberations began. Counsel made no attempt to invoke the principles of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It is now suggested that they were incompetent in not doing so.

This case was tried in November of 1986. Although this was post-*Batson*, we do not believe that it would necessarily occur to competent counsel that a white defendant could make a prima-facie case of *Batson* discrimination through the excuse of black jurors by the prosecution. This is particularly so in a case in which the defendant used a peremptory challenge against a black defendant. The facts do not demonstrate incompetence in this regard.[1]

III. *Failure to Present Evidence at Penalty Phase* (Point IV)

■ It is contended that trial counsel were incompetent because they offered no

1. On the application of *Batson* when the defendant is not a member of a cognizable minority see *Holland v. Illinois,* — U.S. ——, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990).

evidence at the penalty phase, other than the defendant's testimony.

The defendant made a decision to testify at the penalty phase, even though he had not done so at the guilt phase. He made this decision after counsel informed him of his rights and against counsel's advice. Hindsight might show that decision was a strategic or tactical error, but the error is not chargeable to his counsel.

We have already disposed of the claim that psychological evidence should have been introduced at the penalty phase. The available evidence is of doubtful benefit and could have been affirmatively harmful.

Counsel also suggests that the defendant's mother and sister should have been brought to the stand and that his school records should have been introduced. The family testimony would have shown a troubled youth with a father disposed toward violence. Had either the mother or the sister testified, they would have exposed themselves to cross-examination about numerous untoward incidents in the defendant's life. The school records showed poor performance, irregular attendance, and disciplinary problems. Thus the evidence now suggested might very well have done more harm than good. We are unable to say that the trial court erred in concluding that counsel's conduct of the penalty phase represented a reasonable strategic decision.

### IV. *Mistrial and Objection to Venue* (Points V, XI)

■ We treat together the points in which it is argued that counsel was incompetent in not seeking to abort the trial. One has to do with innocuous contact between the defendant's employer and two jurors. Incompetence is also suggested in that counsel did not pursue the opportunity to have the case tried in the eastern portion of Jackson County rather than the western.

Trial counsel testified that they were satisfied with the jurors in question and that they preferred western Jackson County to eastern. These are decisions counsel may properly make. The movant's lawyer expert testified that, in her opinion, counsel in a death case should pursue every opportunity to obtain a mistrial because this would give them negotiating power. The trial judge could properly reject this claim and could sustain the strategic decision to go forward with the trial because of counsel's belief that the trial at hand, with the jury in the box, was probably more favorable than what might be expected at another trial if the proceedings were aborted. Their eventual disappointment in expectations does not establish incompetence, in any respect.

### V. *Unpreserved Errors*

■ The appellant presents multifarious points in which it is charged that trial counsel was incompetent in not preserving claims of error. These are as follows:

Point VI—Failing to object to closing argument.

Point VII—Failure to object to voir dire questions.

Point IX—Failure to object to challenges for cause.

Point X—Failure to object to penalty phase evidence of "bad acts".

Point XVI—Failure to object to victim's photograph.[2]

Point XVIII—Failure to object to argument about lack of apology.[3]

Some of these points were considered and rejected on the initial appeal, without regard to any failure of preservation. Trial counsel testified that some objections were omitted because they did not appear to be meritorious, and others because the evidence did not appear to be particularly harmful. One of the attorneys said from the stand what any experienced trial lawyer knows—that it is not always wise to make all possible objections.

---

**2.** It is charged in Point XVII that the receipt of this evidence, without objection, constituted constitutional violation.

**3.** It is charged in Point XIX that the receipt of this evidence, without objection, constituted constitutional violation.

■ We will not permit motion counsel to convert unpreserved error into viable error by arguing incompetence. Defendants may be held to the consequences of counsel's failure to object, whether the failure is the result of a strategic decision, or is due to inadvertence. The fact that a meritorious objection is not made does not demonstrate incompetence.[4] There must be a showing that counsel's overall performance fell short of established norms and that this incompetence probably affected the result.[5] Otherwise failure to object constitutes a procedural default, precluding appellate or collateral relief.[6]

As Justice O'Connor said in *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986):

> We think, then, that the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default....

The omissions here complained of were tangential. They are not "egregious and prejudicial." *Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649. They form a small part of a trial lasting several days. There was nothing to indicate that counsel were unfamiliar with the grounds for objection or lacking in alertness. The trial judge expressly found that counsel were not incompetent. Our perusal of the trial transcript shows that they conducted a vigorous defense, probing legal points in chambers, cross-examining in depth and making numerous objections. Their testimony at the motion hearing shows that they

planned the defense carefully, at both the guilt and the penalty phases. We see no basis for reversing the trial court on the issue of competence of counsel.

## VI. *Aggravating Circumstances* (Points XII, XV)

The appellant argues that the aggravating circumstances of killing during the course of a robbery, and killing to obtain a thing of value, were duplicative. This contention was rejected on the initial appeal.[7] Our conclusion is not changed by the attempt to cloak it in constitutional garments.

## VII. *"Residual Doubt"* (Point XX)

■ It is asserted that counsel was incompetent for failure to tender an instruction on "residual doubt," citing *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). No suggested instruction is tendered.

■ The trial jury was properly instructed in accordance with MAI–CR2d 13.-46. This instruction meets applicable constitutional standards in telling the jury that it must find aggravating circumstances beyond reasonable doubt, and that it is not under any circumstances obliged to assess the death penalty.

The defense of well founded capital cases is extremely difficult. Counsel must make many decisions during the course of the proceedings. There must be a limit to second guessing. The findings and conclusions of the trial court are amply supported.

The judgment is affirmed.

ROBERTSON, HIGGINS, COVINGTON and HOLSTEIN, JJ., concur.

**4.** *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

**5.** *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

**6.** *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

**7.** *State v. William R. Jones*, 749 S.W.2d 356, 365 (Mo. banc 1988).

BILLINGS, J., concurs in result in separate opinion filed.

RENDLEN, J., concurs in result and concurs in concurring in result opinion of BILLINGS, J.

BILLINGS, Judge, concurring in result.

This Court recently considered the use of similar testimony by the identical so-called expert lawyer seeking to demonstrate incompetency of trial counsel in a capital case and held that the motion "[C]ourt was as qualified as the witness to form an opinion on trial counsel's competency." *Sidebottom v. State*, 781 S.W.2d 791 (Mo. banc 1989).

The attorney, offered as an expert in the defense of death penalty cases, graduated from law school in 1975. She initially was employed by the Legal Aid Defender's Society and thereafter employed by the City of Kansas City for six years defending litigation and involved in housing and zoning problems. From Kansas City she went to Texas and worked one year as a police legal advisor and one year for the city in general municipal work. In 1983 she commenced work for the Jackson County Public Defender's Office and continued in that work until she was employed by a large Kansas City law firm in 1988. At the firm she said, "My primary assignments are appointed work for the courts, *pro bono* work, what criminal law they have, juvenile court matters, class action suits over in the prison. I have two death penalty *habeas*, and then—I'm technically in the business litigation department." She said she has handled or been involved in 50 to 60 felony trials and several murder cases, including death penalty cases. In some of the capital cases her participation consisted of doing research, preparation of motions, and interviewing witnesses. She has never served as lead counsel in a capital trial.

The attorney testified she had attended training seminars on the defense of capital murder cases, including those conducted "by the Illinois State Public Defenders, the National Association of Advancement for Colored People Legal Defense Fund," the Kentucky Public Advocates Death Penalty Seminar. She has served as a "facilitator" ("it's sort of like a teacher") at the Missouri Public Defenders Death Penalty Seminar. She subscribes to the "Southern Poverty Law" and has worked with Millard Farmer who is associated with Southern Poverty Law Center and "probably the most active death penalty defender in the country." In addition, she participates in the Missouri Bar Criminal Law Section and is a member of the National Legal Aid and Defenders Association.

The opinions voiced by the "expert" are nothing more than second-guessing of the decisions, trial strategy, and tactics of the trial attorneys, through the omniscient eye of hindsight. Speculation and conjecture as to a different result do not give rise to ineffective assistance of counsel. While a mental examination may very well be called for in some capital cases, the law does not mandate such an examination in all capital cases. The lower court properly rejected the testimony of the witness-lawyer.