STATE of Missouri, Respondent,

v.

William BURGESS, Appellant.

No. 72796.

Supreme Court of Missouri,
En Banc.

Dec. 18, 1990.

Kathleen G. Green, Henry B. Robertson, St. Louis, Craig Johnston, Columbia, for appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

BLACKMAR, Chief Justice.

The defendant was jury convicted of two counts of forcible rape and one count of forcible sodomy. The court pronounced one life sentence and two consecutive fifteen year sentences. He appealed, assigning four points of error. The court of appeals found that the first three of these were without merit. The fourth point dealt with the consecutive sentences. The court of appeals transferred the case here, taking note of the conflict between its decisions and those of the western district on the proper application of § 558.026.1, RSMo 1986, and noting the Southern District's transfer to this Court of *Williams v. State*, 800 S.W.2d 739 (Mo. banc 1990) (decided today), because of that conflict.

In *Williams* we have now resolved the conflict in favor of the Western District's interpretation. Thus when a defendant's convictions consist only of sex offenses the sentencing court has discretion to run them concurrently. It is appropriate to vacate the sentence in this case and remand so that the circuit court may be fully informed of the scope of its discretion when it proceeds with the sentencing. By our construction, the statute gives the circuit court discretion to run the sentences consecutively or concurrently. We of course intimate no opinion as to how that discretion should be exercised.

We stand possessed of the entire case. On the other three points assigned for reversal, we agree with the Court of Appeals. We adopt the opinion of Judge Jean C. Hamilton on these three points, and set out those portions of her opinion in the appendix.

The judgment of conviction is affirmed. The sentence is vacated and the case is remanded to the circuit court for resentencing.

ROBERTSON, COVINGTON and HOLSTEIN, JJ., concur.

RENDLEN, J., dissents in separate opinion filed.

HIGGINS and BILLINGS, JJ., dissent and concur in dissenting opinion of RENDLEN, J.

APPENDIX

In the Missouri Court of Appeals

Eastern District

DIVISION FOUR

No. 56265

OPINION FILED: May 29, 1990

A jury convicted Appellant, William Burgess (hereinafter Burgess), of two counts of forcible rape, § 566.030 RSMo 1986, and one count of forcible sodomy, § 566.060, on January 5, 1989. The trial court sentenced Burgess, a class X offender, to life imprisonment on the first count of forcible rape and to two 15–year terms on the remaining counts of rape and sodomy. The sentences were ordered to run consecutively. Burgess appeals.

The evidence, viewed in the light most favorable to the verdict, reveals the following facts. On April 6, 1988, at 9:30 p.m., the victim returned to the apartment she shared with her mother and stepfather, Burgess. Her mother left for work just before 10 p.m., and Burgess returned home at 10:20 p.m. Burgess repeatedly called the victim into his bedroom, telling her that he wanted to discuss their poor relationship. While standing in the doorway, the victim told Burgess that she did not want to talk about the situation. Burgess then requested that she sit on the bed so they could talk. When the victim stood up from the bed in order to leave the room, Burgess grabbed her and threw her down on the bed. After shutting the bedroom door, he grabbed the victim around her throat and ordered her to remove her clothes. When she refused, Burgess began removing her clothes, forced her to remove some, and removed his own clothes. He then threw the victim back on the bed, sodomized her, and raped her twice. After the second rape, Burgess followed the victim to the bathroom and told her to "push that sperm out" so there was no evidence of sexual intercourse. The victim then ran to her bedroom, closed the door, and pushed an etigere in front of it. Burgess broke open the door as the victim was trying to escape through the window. The victim smashed the window with her arm and tried to climb out onto the ledge. Burgess grabbed her and tried to pull her back through the window. The victim eventually climbed out onto the ledge and jumped naked into the arms of onlookers.

On appeal, Burgess raises four points. He contends that the trial court erred in 1) denying defense counsel's motion to strike for cause a juror who possibly knew the father of one of the State's witnesses; 2) failing to declare a mistrial when the victim, while on the stand, tore in half a photograph of herself that she had given Burgess; 3) allowing the state to peremptorily strike three black members of the venire without considering the State's explanations for its challenges; and 4) assuming that § 558.026 mandates consecutive sentences for multiple sex crimes.

In Point I, Burgess contends that the trial court wrongfully forced him to use a peremptory challenge to excuse a venireperson who should have been stricken for cause. Burgess claims that Venireperson Earley was biased in favor of the State because he possibly knew the father of a policeman testifying for the State, because his son was a deputy sheriff, and because his brother-in-law was a judge. Burgess also argues that the trial court erred in failing to conduct its own examination of Earley.

During voir dire, the prosecutor repeatedly questioned Venireperson Earley as to whether his possibly knowing the police officer's father would affect his ability to be fair and impartial. Earley repeatedly and unequivocally replied, "No." When asked by defense counsel if he would be embarrassed to decide against the State after an acquaintance's son testified for the State, Earley answered, "No, sir." Earley was then asked a series of questions about whether he could keep an open mind, give both sides a fair trial, and listen to what the defendant had to say. To each question, Earley replied, "Yes, sir." In addi-

tion, the defense attorney asked Earley whether his son being a deputy sheriff or his brother-in-law being a judge would prevent him from being fair and impartial. Earley repeatedly and unequivocally answered, "No."

The trial court has broad discretion in determining the qualifications of a venireperson, and its finding will remain undisturbed absent a clear abuse of discretion and a real probability of injury to the complaining party. *State v. Smith*, 649 S.W.2d 417, 422 (Mo. banc 1983); *State v. Owens*, 759 S.W.2d 73, 76 (Mo.App.1988); *State v. Mouser*, 714 S.W.2d 851, 858 (Mo. App.1986). The trial judge is better able to evaluate a potential juror's qualifications because of personal observation, and "any doubts as to the trial court's findings will be resolved in its favor." *State v. Smith* 655 S.W.2d 745, 747 (Mo.App.1983). Moreover, the trial court's duty to make an independent inquiry as to a potential juror's qualifications arises only when the venireperson equivocates about his ability to be fair and impartial. *State v. Wheat*, 775 S.W.2d 155, 158 (Mo. banc 1989).

Here, the record indicates that Venireperson Earley responded unequivocally to every question he was asked during the voir dire. He repeatedly indicated that he would have no trouble being a fair and impartial juror. Because he exhibited no equivocation whatsoever, the trial court was not required to conduct an independent inquiry. Burgess cites *State v. Holliman*, 529 S.W.2d 932, 939 (Mo.App.1975), for the proposition that the trial court must make an independent inquiry and cannot rely on the potential juror's own conclusions of his ability to act impartially. In *Holliman*, however, the venireperson made several equivocal statements that suggested the possibility of prejudice. Given the tenuousness of the relationship between Earley and the police officer's father coupled with Earley's repeated and unequivocal assertions of impartiality, the trial court committed no error in overruling defense counsel's challenge to Venireman Earley. The first point is denied.

In Point II, Burgess asserts that the trial court erred in failing to declare a mistrial when the victim, while testifying, tore in half a photograph of herself (Defense Exhibit One) that she had given to Burgess. Burgess complains that the act was highly prejudicial to his case in that it was a demonstration staged by the victim to undermine his defense of consent. Burgess entered the photo, inscribed with the words "To my crazy stepfather William, Love, Jeanette," to support his claim that the victim cared for him. He claims that she tore the evidence in order to lead the jury to believe that she did not care for him at all.

This issue has not been properly preserved for appellate review because defense counsel neither requested a mistrial when the incident occurred nor raised the issue in his motion for new trial. *State v. Forshee*, 723 S.W.2d 480, 481 (Mo.App. 1986). Defense counsel may not now complain of error in the failure of the trial court to take an action not requested. *State v. Miller*, 653 S.W.2d 222, 226 (Mo. App.1983).

Although Burgess has not requested us to consider the alleged error as "plain error" under Rule 29.12(b), we can do so *sua sponte. State v. Babbitt*, 639 S.W.2d 196, 198 n. 2 (Mo.App.1982). Under the plain error rule, relief is granted only when the error "so substantially affects the rights of the accused that a 'manifest injustice or miscarriage of justice inexorably results if left uncorrected.'" *State v. Sidebottom*, 753 S.W.2d 915, 920 (Mo. banc 1988) (quoting *State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983)).

The declaration of a mistrial is a drastic remedy that should be employed only in those extraordinary circumstances in which the prejudice to the defendant cannot otherwise be removed. *State v. Bailey*, 760 S.W.2d 122, 124 (Mo. banc 1988). Furthermore, the decision to declare a mistrial resides largely within the discretion of the trial court, which, having had an opportunity to observe the incident, is better able to determine whether prejudice necessitating a mistrial occurred. *State v. Burroughs,*

740 S.W.2d 272, 275 (Mo.App.1987). For that reason, its decision will rarely be disturbed on appeal. *Miller,* 653 S.W.2d at 226.

Here, the trial court abused no discretion in failing to declare a mistrial because no evidence shows that the failure to declare a mistrial resulted in a manifest injustice. First, the victim's act of tearing the photograph was not inconsistent with the attitude that she exhibited while on the stand. She had repeatedly indicated her dislike for her stepfather Burgess throughout her testimony. Secondly, no words accompanied the action, and the victim's motivation for tearing the photo was unclear. Given the circumstances, this action could have been interpreted by the jury in a number of different ways. Finally, defense counsel used the incident in question to his advantage during closing argument by portraying the victim as a melodramatic, spiteful person who tore the photograph to hide the truth of her affair with her stepfather. In so doing, he neutralized any prejudice that the act might have effected. The second point is denied.

In Point III, Burgess contends that the trial court erred under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in allowing the State to peremptorily strike three black members of the venire panel without first considering the State's explanations for its challenges. Burgess contends that this error constituted a denial of his right to equal protection.

The fifty-member venire panel was composed of fifteen black and thirty-five white members. The prosecutor used three of his six peremptory challenges to excuse black members. Ultimately, the jury that heard the Burgess case was comprised of four blacks and eight whites.

In *Batson,* the Supreme Court recognized that a black defendant is denied equal protection of the law when the State tries him before a jury from which members of his own race have been purposefully excluded. *Batson,* 476 U.S. at 85, 106 S.Ct. at 1716. In addressing this problem, the Court articulated a three-step procedure for determining whether a black defendant has made a prima facie showing of purposeful discrimination in the selection of the jury through the state prosecutor's use of peremptory challenges. First, the defendant must show that he is a member of a cognizable racial group and that the prosecutor used peremptory challenges to exclude members of his race. Second, the defendant is entitled to rely on the fact that peremptory challenges permit those prosecutors who are inclined to discriminate the opportunity to do so. Third, the defendant must show that these facts and all relevant circumstances raise an inference that the prosecutor used his peremptory challenges to exclude venirepersons from the jury on account of race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723.

Burgess meets the first two criteria set forth in *Batson:* he is a member of the same racial group as the excluded venirepersons, and he is entitled to rely on the fact that peremptory challenges permit discrimination in jury selection. He has failed, however, to show how these facts and relevant circumstances raise an inference of discrimination. Unlike *Batson,* the jury here was not monochromatic. Burgess was tried before a jury which was one-third black. This Court has previously held that when a black defendant is tried before a jury which includes members of his own race in numbers similar to the ones here, these statistics undercut any inference of discrimination. *State v. Crump,* 747 S.W.2d 193, 196 (Mo.App.1988) (jury comprised of five blacks, seven whites); *State v. McCrady,* 752 S.W.2d 430, 431 (Mo.App.1988) (jury comprised of eight blacks, four whites); *State v. Muhammad,* 757 S.W.2d 641, 642 (Mo.App.1988) (jury comprised of four blacks, eight whites).

In addition, the prosecutor had little reason to remove blacks intentionally from the jury where, as here, the defendant and the victim, both material witnesses to the crime, were black. This factor further undercut any inference of discrimination. *State v. Muhammad,* 757 S.W.2d at 642. Burgess thus failed to make the prima

facie showing required by *Batson*. The third point is denied.

* * *

RENDLEN, Judge, dissenting.

Appellant was convicted of two counts of forcible rape and one count of forcible sodomy, all perpetrated in one disgusting attack upon his stepdaughter. Pursuant to § 558.026.1, RSMo 1986, the trial court assessed one life sentence and two consecutive fifteen-year sentences.

For the reasons set forth in my dissent in *Williams v. State*, 800 S.W.2d 739, I would hold the sentences were properly assessed consecutively according to the provisions of § 558.026.1, hence the conviction and sentence should be affirmed in all respects.