**STATE of Missouri, Respondent,**

v.

**Jeffrey THURMAN, Appellant.**

**Jeffrey L. THURMAN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 46434.**

Missouri Court of Appeals,
Western District.

April 5, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1994.

Application to Transfer Denied
Aug. 15, 1994.

Rebecca L. Kurz, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BERREY, P.J., and KENNEDY and ELLIS, JJ.

ELLIS, Judge.

Jeffrey Thurman appeals from his convictions for assault in the first degree, § 565.050, RSMo 1986, and armed criminal action, § 571.015.1, RSMo 1986, and from consecutive sentences of thirty and ten years imprisonment, respectively. Thurman also appeals from the denial of his Rule 29.15 motion for post-conviction relief after an evidentiary hearing.

The judgment of the motion court is affirmed. The judgment of the trial court is affirmed in part and remanded in part.

On January 25, 1991, 32–year–old Carol McGinney drove to the home of a friend, Rueben Hubbard, in Kansas City. McGinney arrived at Hubbard's house at approximately 10:20 p.m. and parked her car on the street in front of his house. While still sitting in her car, McGinney turned on the dome light of her Ford Escort and reached into the back seat to get some tickets for a birthday party she was planning. While doing so, McGinney heard a scratching or tapping sound at her window and turned to see a man with a gun standing beside her car. The man told her to get out of the car. When she did not immediately respond by opening the door, the man became belligerent and started shouting at her to open the door. McGinney offered to roll the window down to give the man her purse but he did not respond. She then turned off the dome light and dove onto the floor of the car covering her head with her left arm. As she did this, she heard a series of gunshots and felt a burning sensation across her mouth and lower lip. Next, she heard her friend, Hubbard, shout that the assailant was "walking up the street" at which point she got out

of her car and noticed that the driver's side window had been shot out. Once inside Hubbard's house, McGinney realized that she had been shot in the left arm and that a bullet had also grazed her right shoulder. She also had broken glass and blood in her mouth and lacerations on her face where the glass had cut her. After police arrived at the scene, McGinney was taken to the hospital for treatment where she remained for three and one-half days. A bullet was removed from her arm six weeks later. The police also recovered shell casings near McGinney's car and a spent bullet from the back seat of her car.

In February 1991, McGinney identified Thurman as her assailant from a photographic lineup. Thurman was subsequently charged with first degree assault and armed criminal action. The case was tried to a jury beginning on January 28, 1992. At the conclusion of the trial on January 30, 1992, the jury found Thurman guilty on both counts and he was sentenced to thirty years imprisonment on the assault count and ten years imprisonment on the armed criminal action count, with the sentences to run consecutively.[1]

On December 23, 1992, Thurman filed a *pro se* motion under Rule 29.15 seeking to set aside his convictions and sentences. An amended motion was filed by appointed counsel on March 1, 1993, and an evidentiary hearing was held on April 9, 1993. On June 5, 1993, the motion court issued its finding of fact and conclusions of law denying Thurman's Rule 29.15 motion for post-conviction relief. Thurman appeals from his convictions and the denial of his Rule 29.15 motion. These appeals have been consolidated under Rule 29.15(*l*).

In his first point, Thurman contends the trial court clearly erred in overruling his *Batson*[2] objection without requiring the State to provide a race-neutral reason for its use of a peremptory strike to remove an

---

1. The court also ordered Thurman to serve a thirty-year sentence previously received as a result of a separate conviction. *See, Thurman v. State,* 859 S.W.2d 250, 251–52 (Mo.App.1993). That sentence was to run concurrently to the thirty-year term of imprisonment he received on the assault conviction in the instant case and

consecutively to the ten-year term of imprisonment received for the armed criminal action conviction.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

African–American venireperson from the jury panel. Thurman argues that the State's use of a peremptory challenge to remove Roosevelt Figures, an African–American, from the jury panel denied both himself and Mr. Figures their rights to equal protection of the law under the state and federal constitutions.

■ At the outset, we address the State's claim that Thurman's *Batson* challenge was not properly raised at the trial level because he did not specifically state that he was objecting on the basis of *Batson v. Kentucky* and did not allege any constitutional violation. However, where it is clear from the record that defense counsel intended to assert a *Batson* challenge and such intention was fully understood by the trial court, the form of the motion is not fatal to appellate review. *State v. Starks,* 834 S.W.2d 197, 198 n. 1 (Mo. banc 1992).

In this case, the record shows that the trial court was fully cognizant that defense counsel was attempting to assert a *Batson* challenge when he objected to the State's use of a peremptory strike to excuse venireperson Figures. Prior to the peremptory challenges, the twenty-four person venire panel consisted of six black and eighteen white members. Only one of the prosecutor's six peremptory challenges was used to excuse an African–American. The selected jury was ultimately comprised of five blacks and seven whites. Following defense counsel's objection, the court responded by identifying the excused venireperson, Mr. Figures, as an African–American. The court then proceeded to question defense counsel as to whether he believed there was some pattern to the State's use of the peremptory strikes, noting that there remained "five or six others who are member[s] of the same racial class to which Thurman belongs." After determining the number of African–Americans remaining on the jury, the court denied the challenge because it could not "find a pattern of usage such that would offend *Baskin* [sic]".[3] When Thurman's attorney pointed out that there had been no race-neutral reason articulated

for the strike, the court responded that the State was not required to provide an explanation.

Thurman contends that the trial court's reliance on the presence of other African–Americans on the jury panel was clearly erroneous and does not relieve the court of its obligation to require the State to provide a race-neutral explanation for the challenged strike.

■ In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court ruled that the discriminatory use of peremptory challenges on the basis of race violates the Equal Protection Clause of the United States Constitution. Under *Batson,* a defendant may establish a prima facie case of purposeful discrimination based solely on evidence concerning the prosecutor's use of peremptory challenges during jury selection. To establish a prima facie case, the defendant must show (1) he or she is a member of a cognizable racial group; (2) the prosecutor used peremptory strikes to exclude venirepersons who are members of the defendant's race; and (3) the facts and circumstances of the case raise an inference that the prosecutor exercised the peremptory strike to remove a venireperson on the basis of race. 476 U.S. at 96, 106 S.Ct. at 1723. Once the defendant makes a prima facie showing, the State is required to provide a race-neutral explanation for the removal of the venireperson. *Id.* at 97, 106 S.Ct. at 1723.

In *State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987), the Missouri Supreme Court directed the trial courts of this state to consider the prosecutor's explanations in determining whether a defendant had made a prima facie showing that the prosecutor's peremptory strikes were racially motivated. However, the Court seemingly abandoned this approach in December, 1990 when it decided *State v. Burgess,* 800 S.W.2d 743 (Mo. banc 1990). In *Burgess,* the Court deviated from its previous directive under *Antwine* in holding that trial courts were not

---

**3.** We presume the court referred to *Batson v. Kentucky* and was apparently misunderstood by the court reporter.

required to consider any race-neutral reasons offered by the State in determining whether the defendant had established a prima facie case of discriminatory use of the challenges. *Id.* at 747. The court in *Burgess* denied the defendant's *Batson* motion because he had failed to establish a prima facie case in failing to show that the facts and circumstances of the case raised an inference of discrimination. *Id.* In denying the *Batson* challenge, the court relied, at least to some degree, upon the presence of other African–Americans on the jury panel in noting that any inference of discrimination was undercut by the fact that both the defendant and victim were African–Americans and that one-third of the jury was ultimately comprised of African–Americans. *Id.*

Recognizing the confusion caused by the apparent abandonment of *Antwine* in view of the *Burgess* ruling, the Missouri Supreme Court, in *State v. Parker*, 836 S.W.2d 930 (Mo. banc 1992), clarified the procedural guidelines for trial courts to follow when confronted with a timely *Batson* challenge. In *Parker*, the defendant argued that even if he had failed to establish a prima facie case, it was error for the trial court to overrule his *Batson* challenge in view of *Antwine* without first requiring the State to provide an explanation for its peremptory strikes. The defendant claimed that the trial court's failure to comply with *Antwine* "prevented him from establishing that the [S]tate's strikes were racially motivated in violation of his and the excluded venireperson's equal protection rights." *Id.* at 937. The court agreed and ruled that a defendant should not be required to establish a prima facie case of discriminatory use of peremptory strikes before the state is required to provide race-neutral reasons for such challenges. *Id.* at 938–40.

Under *Parker*, the defendant must first raise a timely *Batson* objection and identify the cognizable racial group to which the venireperson belongs. *Id.* at 939. The trial court must then require the State to provide race-neutral explanations for the challenged strikes. *Id.* If an acceptable explanation is given by the State, the burden shifts to the defendant to show that the explanation was merely pretextual and the strike was racially motivated. *Id.* In determining whether the defendant has established purposeful discrimination, the trial court should consider the proffered explanations in view of the totality of the circumstances of the case. *Id.*

▮ Here, the State argues that the presence of five remaining African–Americans who ultimately served on the jury as well as the fact that the prosecution only used one of its six peremptory challenges to remove an African–American from the venire panel, tends to establish a lack of discriminatory intent. All of the cases cited by the State for this argument were decided before *Parker* and before *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). In *Powers*, the United States Supreme Court recognized that the discriminatory use of peremptory challenges adversely affects not only the defendant, but the excluded venireperson as well. 499 U.S. at 413, 111 S.Ct. at 1372. In view of *Powers*, and certainly after *Parker*, Missouri trial courts may no longer place decisive reliance upon the presence of African–Americans on the selected jury nor may the courts rely on the State's failure to use all of its strikes to exclude African–Americans from the venire panel. *Parker*, 836 S.W.2d at 940. "The removal of even one African–American person from the venire for racial reasons constitutes a violation of the equal protection clause regardless of the racial composition of the selected jury." *Id.*

In this case, the State used a peremptory strike against an African–American who had remained silent throughout the entire voir dire process. In response to an objection by defense counsel, the trial court acknowledged that Thurman is a member of the same racial class as the excluded venireperson, but denied the challenge after determining that several other African–Americans still remained on the jury panel. The court also failed to require the prosecutor to provide race-neutral reasons for the challenged strike.

The State argues that it was not required to provide race-neutral reasons for the striking of Mr. Figures because Thurman failed to make a prima facie case of purposeful discrimination. However, under *Parker*, a

defendant's failure to make a prima facie showing does not relieve the State of its obligation to provide a race-neutral explanation for the challenged strike. *Id.* at 938. The State contends that this issue is controlled by *Burgess* since *Parker* was not decided until six months after Thurman's trial. Although the State claims that *Parker* should not be applied retroactively, it has presented no authority to indicate that the procedure outlined in *Parker* should not be applied to cases which were not yet final or pending on direct review at the time *Parker* was decided.

■ This issue was before the United States Supreme Court in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In *Griffith,* the question was whether the *Batson* ruling should be applied retroactively to cases which were not yet final or pending on direct review at the time *Batson* was decided. The Court answered that question in the affirmative, holding that new rules governing the conduct of criminal proceedings are to be applied retroactively to all state and federal cases which are not yet final or pending on direct review. 479 U.S. at 328, 107 S.Ct. at 716.

Even aside from the Supreme Court's ruling in *Griffith,* a survey of the procedures followed by the courts of this state in recent decisions involving *Batson* challenges shows that *Parker* has been applied retroactively by Missouri courts.

*State v. Starks,* 834 S.W.2d 197 (Mo. banc 1992), involved a *Batson*-based case which was pending on appeal with the Missouri Supreme Court at the time *Parker* was decided. As in the instant case, the State in *Starks* argued that under *Burgess,* it was not required to give race-neutral reasons. *Id.* at 198. In rejecting the State's argument, the Court noted that "race-neutral explanations must always be given when a defendant properly raises a *Batson* objection." *Id.*

In *State v. Cortez–Figueroa,* 855 S.W.2d 431, 436–37 (Mo.App.1993), this court applied *Parker* in determining whether a *Batson* challenge had been properly raised notwithstanding that the trial in that case occurred after the *Burgess* decision and before *Parker* was decided.

Similarly, in *State v. Pendleton,* 860 S.W.2d 807, 810 (Mo.App.1993), the Eastern District applied the procedures set forth in *Parker* when confronted with a *Batson* challenge in determining whether the prosecutor's explanations were racially motivated. In *Pendleton,* the trial also took place after *Burgess* and before *Parker* was decided.

In *State v. Mack,* 855 S.W.2d 457, 459–60 (Mo.App.1993), the defendant argued that the trial court had erred in overruling his *Batson*-based challenge claiming that the prosecutor's explanation for using a peremptory strike to remove an African–American venireperson was pretextual. Notwithstanding that the trial in that case occurred in May 1991, just a few months after the *Burgess* decision and well over a year before *Parker* was decided, the court applied the *Parker* procedure in determining whether the trial court had properly ruled as to whether the prosecutor's reasons were racially motivated. *Id.*

In view of the foregoing, we conclude that the procedures set forth in *Parker* should be applied to cases which were not yet final or pending on appeal at the time *Parker* was decided. Because this case was pending on appeal at the time *Parker* was decided, the procedures enunciated by the Missouri Supreme Court in that decision should be applied accordingly.

■ Since the trial court in this case denied Thurman's *Batson* objection without requiring the prosecutor to provide a race-neutral explanation for the challenged strike, this cause must be remanded for an evidentiary hearing consistent with *State v. Parker* to determine whether the State used its peremptory challenge in a discriminatory manner.

In Point II, Thurman contends the trial court plainly erred in admitting into evidence testimony concerning his involvement in another assault which was committed with the same gun that was used to shoot Carol McGinney. Thurman claims the evidence of the subsequent assault, albeit probative, (1) was not necessary to prove his identity; (2) the probative value did not outweigh the prejudice from such admission; and (3) the

State's argument and testimony regarding the name of the victim and Thurman's confession to the other shooting exceeded the scope of the court's pre-trial ruling regarding the admission of such evidence.

■ Since Thurman has failed to preserve this claim for appellate review by not including it in his motion for new trial, he requests plain error review. In reviewing a claim for plain error, relief may be granted only when it is shown that the alleged error so substantially affected the rights of the defendant that a manifest injustice or miscarriage of justice will result if left uncorrected. *State v. Isa*, 850 S.W.2d 876, 884 (Mo. banc 1993). The trial court has broad discretion in ruling on matters concerning the admissibility or exclusion of evidence and this court will not interfere with that ruling absent a clear showing of abuse of discretion. *State v. Ellis*, 853 S.W.2d 440, 445 (Mo.App.1993). The general rule regarding the admissibility of evidence of separate, uncharged crimes is that such evidence is inadmissible unless it has some legitimate tendency to directly establish the defendant's guilt of the crime for which he is charged. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). There are several exceptions to the general prohibition against the use of other crimes evidence. Evidence of other crimes has a legitimate tendency to prove the crime charged when it tends to show "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial." (brackets in original). *Id.* (quoting *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992)). Even if the evidence of other crimes does not fall within one of the five enumerated exceptions, such evidence may still be admissible if it is logically and legally relevant and its probative value outweighs its prejudicial effect. *Bernard*, 849 S.W.2d at 13. The trial court is in the best position to determine whether the prejudicial effect of evidence outweighs its relevance. *Ellis*, 853 S.W.2d at 445.

■ In this case, Thurman concedes that the other crimes evidence introduced by the State is probative. The evidence showed that Thurman had confessed to shooting another individual at an Amoco station three weeks after McGinney had been shot. The ballistics evidence revealed that the bullet and shell casing recovered from the Amoco station after the shooting was fired from the same gun as the bullet and shell casing recovered from McGinney's car. Ballistics evidence also revealed that both the bullet removed from McGinney's arm after the shooting and the bullet removed from the Amoco station were fired from the same gun.

Such evidence linking the gun used by Thurman for the commission of both crimes has a legitimate tendency to directly establish his identity as the person who shot McGinney. As such, the evidence was relevant. Moreover, the court limited the amount of evidence the State was allowed to introduce concerning Thurman's involvement in the subsequent assault. In addition, the court submitted an instruction cautioning the jury to consider such evidence solely for the issue of identification of the defendant but for no other purpose. Although the State identified the victim and location of the other assault, it did not elaborate further or present substantial details concerning that crime. At the post-conviction hearing, Thurman's trial attorney admitted that the trial court's ruling was correct with regard to the admission of the other crimes evidence. The trial court did not find that the probative value of the evidence was outweighed by the prejudicial effect. We defer to the court's assessment in determining the prejudicial effect, if any, concerning the admissibility of such evidence.

In view of the foregoing, we find the evidence of Thurman's subsequent assault both relevant and admissible. As such, the trial court did not err, plain or otherwise, in admitting such evidence. Point denied.

Thurman contends the motion court clearly erred in denying his Rule 29.15 post-conviction motion because he received ineffective assistance of counsel in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitu-

tion and Article I, Sections 10 and 18(a) of the Missouri Constitution. Thurman alleges that his trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances. Specifically, Thurman claims that his trial counsel was ineffective in failing to preserve in a motion for new trial any objections made to the State's use of evidence that Thurman had committed another assault.

This argument is merely an extension of Thurman's plain error claim under Point II which addressed the admission of other crimes evidence. He now claims his attorney was incompetent for failing to preserve for review his trial objections to the State's introduction of evidence of the subsequent assault committed by Thurman.

■ The Missouri Supreme Court has rejected similar arguments in holding that motion counsel may not "convert unpreserved error into viable error by arguing incompetence." *Jones v. State*, 784 S.W.2d 789, 793 (Mo. banc 1990). The mere failure by trial counsel to preserve a meritorious claim for appellate review does not demonstrate incompetence. *Id.* The movant must show that the attorney's overall performance was below the established norms and that the incompetence probably affected the outcome of the trial. *Id.*

■ Here, Thurman alleges that his attorney was incompetent for failing to preserve the issue concerning other crimes evidence for appellate review. However, he has not demonstrated that trial counsel's performance was below the established norms or that the alleged incompetence affected the result. At the evidentiary hearing, Thurman's trial counsel indicated that he did not include in his motion for new trial any challenge to the admission of the other crimes evidence for strategic reasons. Trial counsel testified that he did not believe it was his "obligation to raise every claim regardless of whether or not it has any merit." He further testified that he thought the court's ruling to admit the evidence was correct.

Conduct which involves an attorney's use of reasonable discretion in matters of trial strategy rarely constitutes ineffective assistance of counsel. *State v. Lumpkin*, 850 S.W.2d 388, 395 (Mo.App.1993). Moreover, defense counsel's failure to preserve a nonmeritorious claim in a motion for new trial does not constitute ineffective assistance of counsel. *State v. Horn*, 806 S.W.2d 155, 157 (Mo.App.1991).

In this case, the record shows that trial counsel elected not to preserve the other crimes issue in the motion for new trial because the claim had no merit and the trial court was correct in admitting such evidence. The evidence of Thurman's other crime was admissible for the purpose of establishing his identity as the person who shot McGinney. As such, the attorney's action was within the reasonable discretion afforded in matters of trial strategy. Therefore, the motion court did not clearly err in denying Thurman's 29.15 motion.

■ In his final point, Thurman contends the trial court plainly erred in submitting Instruction No. 4, patterned after MAI–CR3d 302.04. Thurman asserts that the definition of "proof beyond a reasonable doubt" as proof that leaves the jurors "firmly convinced" of the defendant's guilt impermissibly lowers the burden of proof imposed on the state, thus allowing the jury to find him guilty based on a lesser degree of proof than is required by due process. Identical challenges have been consistently rejected by the Missouri Supreme Court which has repeatedly upheld the definition as constitutionally sound. *State v. O'Brien*, 857 S.W.2d 212, 222 (Mo. banc 1993); *State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993). This court is bound to follow the last controlling decision of that court. *State v. Lumpkin*, 850 S.W.2d at 394.

The denial of Thurman's 29.15 motion for post-conviction relief is affirmed. The direct appeal is remanded to the trial court for an evidentiary hearing in accordance with the guidelines set forth in *State v. Parker* to determine whether the prosecutor used the peremptory strike against venireperson Figures in a discriminatory manner. The trial court shall conduct such hearing and certify to this court a record of its proceeding and finding within 60 days of the date this opin-

ion becomes final. *Parker,* 836 S.W.2d at 940–41; *State v. Daniels,* 861 S.W.2d 564, 566 (Mo.App.1993). In all other respects the judgment of the trial court is affirmed.

All concur.